**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**
**CIVIL ACTION NO. 4:16-CV-00106-HBB**

**REBECCA L. JOHNSON**                                                                     **PLAINTIFF**

**VS.**

**NANCY A. BERRYHILL, Acting**
**Commissioner of Social Security**                                                    **DEFENDANT**

**MEMORANDUM OPINION**
**AND ORDER**

BACKGROUND

Before the Court is the complaint (DN 1) of Rebecca L. Johnson ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).   Both the Plaintiff (DN 11) and Defendant (DN 16) have filed a Fact and Law Summary.

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 9).   By Order entered December 2, 2006 (DN 10), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted.   No such request was filed.

## FINDINGS OF FACT

Plaintiff filed an application for a period of disability and Disability Insurance Benefits on June 10, 2013 (Tr. 22, 173-79).   Plaintiff alleged that she became disabled on August 1, 2012, as a result of chronic low back pain, sciatica, high blood pressure, depression, high cholesterol, hypothyroidism, and coronary artery disease (Tr. 22, 204).   Administrative Law Judge Scott T. Morris ("ALJ") conducted a video hearing from Paducah, Kentucky on January 16, 2015 (Tr. 22, 42-43).   Plaintiff and her attorney, Sara Martin, participated from Owensboro, Kentucky (Id.). Kenneth Boaz testified as an impartial vocational expert during the video hearing (Id.).

In a decision dated April 15, 2015 the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 22-36).   At the first step, the ALJ found Plaintiff engaged in substantial gainful activity during the period August 1, 2012 through June 4, 2013 (Tr. 24).   However, the ALJ found that there has been a continuous 12-month period during which Plaintiff did not engage in substantial gainful activity (Tr. 25). The ALJ's remaining findings addressed the period that Plaintiff did not engage in substantial gainful activity (Id.).

At the second step, the ALJ determined that Plaintiff has the following severe impairments: coronary artery disease and degenerative disc disease (Tr. 25).   Notably, at the second step, the ALJ also determined that Plaintiff's dysthymic and pain disorders are "non-severe"impairments within the meaning of the regulations (Tr. 25-27).

At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in

Appendix 1 (Tr. 27). More specifically, the ALJ concluded that Plaintiff does not meet or equal the requirements of any of the impairments within listing sections 1.00 and 4.00 (Id.).

At the fourth step, the ALJ made the following findings with regard to Plaintiff's residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b). Specifically, the claimant can lift or carry up to 20 pounds occasionally and up to 10 pounds frequently; sit for up to six hours in an eight-hour workday; and can stand or walk up to six hours in an eight-hour day. The claimant must alternate between sitting and standing every hour for approximately five minutes before returning to the alternate position. She can push or pull up to the same limits as lifting and carrying. The claimant can occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds. The claimant can frequently balance, but only occasionally stoop, crouch and crawl. She can have occasional exposure to unprotected heights, moving mechanical parts, extreme cold/heat, humidity/witness, vibration, as well as fumes, odors, dusts, and pulmonary irritants.

(Tr. 27). Relying on testimony from the vocational expert, the ALJ found that Plaintiff is unable to perform any of her past relevant work (Tr. 34).

The ALJ proceeded to the fifth step where he considered Plaintiff's residual functional capacity, age, education, and past work experience as well as testimony from the vocational expert (Tr. 34-35). The ALJ found that prior to February 24, 2015, Plaintiff was a person closely approaching advanced age (age 50-54) under the regulations (Tr. 34, Finding No. 8). *See* 20 C.F.R. § 404.1563(d). The ALJ also found that on February 24, 2015, Plaintiff became 55 years old and she became a person of advanced age (age 55 or older) under the regulations (Tr. 34, Finding No. 8). *See* 20 C.F.R. § 404.1563(e).

The ALJ found that prior to February 24, 2015, Plaintiff was capable of performing a significant number of jobs that exist in the national economy (Tr. 34-35). The ALJ determined that beginning on February 24, 2015, there are no jobs that exist in significant numbers in the national economy that she could perform (Tr. 35). Therefore, the ALJ concluded that Plaintiff was not disabled prior to February 24, 2015, but she became disabled as of that date, and has continued to be disabled through the date of the decision (Id.).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 15-16). The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4).

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, at the fifth step, the ALJ denied in part and granted in part Plaintiff's application for Disability Insurance Benefits (Tr. 34-35). More specifically, the ALJ found from June 4, 2013 through February 23, 2015, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed considering her age, education, work experience, and residual functional capacity. The ALJ also found that Plaintiff turned age 55 on February 24, 2015. The ALJ concluded that Plaintiff became disabled on that date because her age category changed to an individual of advanced age and there are no jobs that exist in significant numbers in the national economy that Plaintiff could perform.

A

1. Plaintiff's Argument

Plaintiff argues that substantial evidence does not support the ALJ's finding that jobs existed in significant numbers in the regional economy according to the adopted residual functional capacity (DN 11-1 PageID # 599). Plaintiff asserts that the vocational expert, Kenny

Boaz, Ed. D, relied on obsolete job descriptions because the DOT last updated the ticket taker description in 1980 and monogram machine tender description in 1977 (Id. PageID # 599-601). In an effort to substantiate her claim that the DOT job descriptions are outdated, Plaintiff performed searches on the Occupational Information Net (O*NET)[1] utilizing those two DOT codes. Plaintiff reports that utilizing the DOT code for monogram machine tender on the O*NET crosswalk brought up a different job title with a different description[2] (Id.). Plaintiff indicates when the DOT code for ticket taker is searched on the O*NET crosswalk, that job appears, but it has a completely different description and SVP level than what the vocational expert testified to during the administrative hearing[3] (Id.). Plaintiff contends in light of the above circumstances the vocational expert's testimony regarding these jobs is not reliable (Id.).

Additionally, plaintiff argues that the number of jobs testified to by the vocational expert are not significant (Id.). Plaintiff explains that the vocational expert testified there were approximately 300 ticket takers regionally and 800 monogram machine tenders regionally (Id.). Plaintiff asserts that while there is no "magic number" that qualifies as "significant," these numbers do not satisfy the requirements of 20 C.F.R. § 404.1566 (Id.). According to Plaintiff, this exact issue has been assessed by the Sixth Circuit in Cunningham v. Astrue, 360 Fed. App'x 606 (6th Cir. 2010) (DN 11-1 PageID # 599-601). Plaintiff indicates that in Cunningham the Sixth Circuit had to address the issue of whether substantial evidence supported the Administrative Law Judge's finding that the existence of 25,000 document preparer's and 5000 security camera

---

1 According to Plaintiff, the Department of Labor uses Occupational Information Net (O*NET) instead of the outdated DOT (DN 11-1 PageID # 600).

2 https://www.onetonline.org/crosswalk/DOT?s=583.685-046&g=Go (last updated 2015).

3 https://www.onetonline.org/link/summary/39-3031.00 (last updated 2016).

monitors in the state of Ohio qualified as significant numbers (Id.). Plaintiff explains that the Sixth Circuit in <u>Cunningham</u> relied upon the factors identified in <u>Hall v. Bowen</u>, 837 F.3d 272, 275 (6th Cir. 1998) to ultimately hold that a remand was warranted to further address this issue as substantive evidence did not support the Administrative Law Judge's finding (Id.).

Plaintiff argues that here the numbers are even more extreme than those in <u>Cunningham</u> (DN 11-1 PageID # 599-601). Plaintiff points out that in the entire region less than 1000 jobs exist for each job description identified by the vocational expert (Id.). Plaintiff asserts that absolutely no evidence was proffered by the ALJ in his opinion as to how these numbers in any way qualify as significant (Id.). Plaintiff contends that none of the factors in <u>Hall</u> were addressed by the ALJ during the fifth step analysis (Id.). Plaintiff argues that given the extremely low number of jobs available in the economy and the fact that one of these jobs does not even exist anymore pursuant to O*NET, the ALJs decision must be reversed as jobs do not exist in significant numbers at the residual functional capacity adopted by the ALJ (Id.). Alternatively, Plaintiff argues as in <u>Cunningham</u>, this case must, in the least, be remanded so that the reliability of the vocational expert's testimony can properly be addressed (Id.).

2. Defendant's Argument

Defendant contends that substantial evidence supports the ALJ's finding that prior to Plaintiff's reaching advanced age, she could perform a significant number of jobs that existed in the national economy (DN 16 PageID # 632-36). Defendant asserts because Plaintiff failed to make her arguments before the ALJ and the Appeals Council, it is inappropriate for her to raise these arguments for the first time before this Court (Id. citing <u>Sims v. Comm'r of Soc. Sec.</u>, 406 F. App'x 977, 982 (6th Cir. 2011)).

If Plaintiff's arguments are not deemed waived, Defendant asserts that Plaintiff's arguments lack merit because the ALJ was entitled to rely upon the testimony of the vocational expert and the DOT (Id. citing 20 C.F.R. §404.1566(c)). Defendant contends that Social Security Ruling 00-4p requires an Administrative Law Judge "to affirmatively identify and obtain any conflicts between the occupational evidence provided by the [vocational expert] and the DOT, as the ruling provides that the DOT is the primary source relied upon by the Agency" (Id. citing 20 C.F.R. § 404.1566(d)(1)). Defendant indicates that the regulations and policy rulings do not contemplate O*NET as a source of evidence (Id. citing 20 C.F.R. § 404.1566(d)(1)-(5); SSR 00-4p). Defendant argues that the ALJ met his duty when he specifically asked if any of the vocational expert's testimony conflicted with the provisions of the DOT (Id. citing Tr. 68). Further, Defendant asserts that it was Plaintiff's duty to cross-examine the vocational expert about inconsistencies between the DOT and O*NET in order to bring the conflicts to the attention of the ALJ (Id. citing Poe v. Comm'r of Soc. Sec., 342 F. App'x 149, 158 (6th Cir. 2009) ("SSR 00-4p only requires the ALJ to elicit a reasonable explanation when there is conflict between the vocational expert and the DOT. The ruling does not require that the ALJ attempt to address or resolve conflicts between the testimony of a vocational expert and the Occupational Outlook Handbook."); Martin v. Comm'r of Soc. Sec., 170 F. App'x 369, 374 (6th Cir. 2006) (holding that the ALJ's only affirmative duty was to ask if a conflict existed between the DOT and the vocational expert's testimony, and it was the plaintiff's duty to bring inconsistencies to the ALJ's attention); Lee v. Comm'r of Soc. Sec., 529 F. App'x 706, 715 (6th Cir. 2013) ("Moreover, the ALJ asked the VE if her testimony was consistent with the Dictionary, and she answered that it

was. This effectively satisfied the Commissioner's burden. . . . Lee's representative could have — but did not — cross-examine the VE concerning her representation.")).

Defendant argues that Plaintiff's reliance on Cunningham v. Astrue, 360 F. App' x 606 (6th Cir. 2010), is misplaced because it is factually distinguishable from the circumstances herein (Id.). Defendant notes that in Cunningham, both jobs "appear[ed] obsolete," and thus common sense dictated that another source of information should have been consulted. Id. at 615-16. Further, Defendant argues the court in Cunningham never reached the question of whether the number of jobs provided was significant, but rather remanded because both jobs appeared obsolete based upon their descriptions in the DOT. Id. at 614-16. Defendant asserts that the ALJ had no affirmative duty to consider O*NET at all, let alone probing the detailed and subtle conflicts between the DOT and O*NET (Id.).

Defendant points out that the vocational expert testified there are 300 ticket taker jobs regionally and 30,000 nationally (Id.). Defendant argues that even if the Court accepted only the ticket taker as a valid representative job, the Sixth Circuit has found that 30,000 total jobs in the national economy qualifies as significant (Id. citing Templeton v. Comm'r of Soc. Sec., 215 F. App'x 458, 462-63 (6th Cir. 2007); see also Taskila v. Comm'r of Soc. Sec., 819 F.3d 902, 905 (6th Cir. 2016) (finding only 6,000 jobs nationwide "fits comfortably within what this court and others have deemed 'significant.'")).

3. Discussion

   a. Waiver

The Court will begin with Defendant's argument that Plaintiff waived this claim by failing to raise it during the administrative hearing through cross-examination of the vocational

expert. First, Defendant's reliance on <u>Sims v. Comm'r of Soc. Sec.</u>, 406 F. App'x 977 (6th Cir. 2011) is misplaced. In the section cited by Defendant, the Sixth Circuit addressed Sims' argument that the hypothetical questions to the vocational expert did not reflect Dr. Guerrero's conclusion that she was moderately limited in her ability to maintain attention and concentration. <u>Id.</u> at 982. The Sixth Circuit held that Sims' argument failed "because the ALJ asked the vocational expert if this restriction would impact a claimant's ability to work as a security monitor, and the expert testified that it would not." <u>Id.</u> The Sixth Circuit merely pointed out that the vocational expert's testimony could have been further refined through cross-examination but Sims' counsel failed to take advantage of that opportunity. <u>Id.</u> at 982. The Sixth Circuit did not hold that Sims waived the claim by failing to cross-examine the vocational expert. <u>Id.</u> Thus, the <u>Sims</u> case does not support Defendant's argument that Plaintiff waived her claim by failing to raise it before the ALJ through cross-examination of the vocational expert.

Obviously, Plaintiff's counsel must be familiar with the information at issue in order to refine the vocational expert's testimony through cross-examination. For example, Plaintiff's counsel was familiar with the limitations expressed by Dr. Bradley. As a result, counsel refined the vocational expert's testimony through cross-examination about the vocational impact of Dr. Bradley's limitations on both jobs (Tr. 68-69).

The circumstances here are distinguishable because there are literally thousands of jobs identified in the DOT. [4] Further, prior to the administrative hearing Plaintiff's counsel had no inkling that the vocational expert would identify the ticket taker (DOT 344.667-010) and

---

4  According to one source, the DOT defines over 13,000 different types of jobs.
https://en.wikipedia.org/wiki/Dictionary_of_Occupational_Titles

monogram machine tender (DOT 583.685-046) jobs in response to the ALJ's second hypothetical question (Tr. 65-67). Obviously, to refine the vocational expert's testimony through cross-examination, Plaintiff's counsel would have needed to conduct research on the DOT and O*NET after the vocational expert identified the two jobs. However, it would be unrealistic to expect Plaintiff's counsel to conduct such research during the hearing. Thus, this part of Defendant's waiver argument is without merit because it places an unreasonable burden on Plaintiff's counsel.

Next, the Court will address Defendant's argument that Plaintiff waived this claim by failing to raise it in her post-hearing brief to the Appeals Council. The record shows that Plaintiff filed a request for review by the Appeals Council (Tr. 15-16) and her post-hearing brief did not include the claim she now raises before the Court (Tr. 307-08). However, in Sims v. Apfel, the Supreme Court held that "[c]laimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues." 530 U.S. 103, 112. In reaching this holding the Supreme Court observed that no statute or regulation required issue-exhaustion, and a judicially imposed issue-exhaustion requirement was not appropriate because the Social Security administrative proceeding is not adversarial. Id. at 107-112. Inasmuch as Plaintiff has exhausted her administrative remedies, she may seek judicial review of her claim. Thus, there is no merit to either part of Defendant's waiver argument.

b. Significant Number of Jobs

The Court will now focus on the merits of Plaintiff's claim and Defendant's response. At the fifth step, the Commissioner has the burden of demonstrating that a "significant" number

of jobs exist in the local, regional and national economies that the claimant can perform, given her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v) and (g); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 684 (6th Cir. 1992); Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990); Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980). Essentially, the Commissioner can satisfy this burden in one of two ways. When a claimant's age, education, previous work experience, and residual functional capacity coincide with all of the criteria of a particular Grid Rule in Appendix 2 of the regulations, referred to as the medical-vocational guidelines, the Commissioner may rely on that Grid Rule to meet this burden. 20 C.F.R. §§ 404.1569, 416.969; Grid Rule 200.00; Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1174 (6th Cir. 1990);Moon, 923 F.2d at 1181. However, when a claimant's residual functional capacity does not coincide with the criteria of a particular Grid Rule, the Commissioner is limited to using the Grid Rule as a framework in the decision making process and must make a non-guideline determination based on the testimony of a vocational expert. 20 C.F.R. § 404.1566(e); Born, 923 F.2d at 1174; Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987); Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 531, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983).

Here, the ALJ found that Plaintiff's residual functional capacity did not coincide with the criteria of Grid Rule 202.14 because Plaintiff could not perform a full range of light work (Tr. 35). Therefore, the ALJ used Grid Rule 202.14 as a framework in the decision making process and made a non-guideline determination based on the vocational expert's testimony (Id.). Relying on the vocational expert's testimony in response to the second hypothetical question, the ALJ found that prior to February 24, 2015, there were jobs that existed in significant numbers in

the national economy that Plaintiff could have performed considering her age, education, work experience, and residual functional capacity (Tr. 34-35 citing 20 C.F.R. §§ 404.1569 and 404.1569a). Specifically, the vocational expert testified that the hypothetical individual could perform work as a ticket taker (DOT 344.667-010) which is light in exertional level, unskilled with an SVP of two, and there are 300 such jobs in the regional economy[5] and 30,000 such jobs in the national economy; and monogram machine tender (DOT 583.685-046) which is also light in exertion, unskilled with an SVP of two, and there are 800 such jobs in the regional economy and 80,000 such jobs in the national economy (Tr. 66-67). Pursuant to SSR 00-4p, the ALJ confirmed that the vocational expert's testimony was consistent with the information contained in the DOT (Tr. 35, 68).

The Sixth Circuit has made clear that there is no "magic number" that qualifies as "significant" for the purposes of satisfying this prong of the disability inquiry. Hall v. Bowen, 837 F.2d 272, 275 (6th Cir. 1988). Instead, the Court must make a fact-specific inquiry that is guided by common sense:

> We are not blind, however, to the difficult task of enumerating exactly what constitutes a "significant number." We know that we cannot set forth one special number which is to be the boundary between a "significant number" and an insignificant number of jobs. . . . A judge should consider many criteria in determining whether work exists in significant numbers, some of which might include: the level of claimant's disability; *the reliability of the vocational expert's testimony*; the reliability of the claimant's testimony; the distance claimant is capable of traveling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on. The decision should

5 The vocational expert confirmed that "regional economy" meant the Commonwealth of Kentucky (Tr. 68).

> ultimately be left to the trial judge's common sense in weighing
> the statutory language as applied to a particular claimant's factual
> situation.

Id. (emphasis added). Here, Plaintiff asserts that the factors set out in Hall raise doubt as to whether the number of jobs identified by the vocational expert is significant. Specifically, Plaintiff asserts that the vocational expert's testimony is not reliable because it is based on obsolete occupational descriptions in the DOT.

The vocational expert based his testimony on two job descriptions set forth in the DOT (Tr. 65-68), a document published by the United States Department of Labor that has not been updated since 1991. [6] However, in the trailer that follows the occupational description, the date last updated (DLU) designation indicates that the ticket taker (DOT 344.667-010) description has not been updated since 1980[7], and the monogram machine tender (DOT 583.685-046) description has not been updated since 1977[8]. Thus, when he responded to the ALJ's hypothetical question, the vocational expert's testimony was actually based on occupational descriptions in the DOT that were 35 and 37 years old, respectively.

The applicable regulation indicates that the Commissioner will take administrative notice of "reliable job information" available from various sources, including the DOT, when determining whether a specific job exists in significant numbers in the regional and national economy. 20 C.F.R. § 404.1566(d)(1); Social Security Ruling 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). "Reliable job information" cannot be obtained from obsolete occupational

---

6 https://www.oalj.dol.gov/LIBDOT.HTM

7 http://www.occupationalinfo.org/34/344667010.html

8 http://www.occupationalinfo.org/58/583685046.html

descriptions.  The Sixth Circuit has said as much when it commented, "common sense dictates that when such descriptions appear obsolete, a more recent source of information should be consulted."  <u>Cunningham v. Astrue</u>, 360 F. App'x 606, 615 (6th Cir. 2010).  The two relevant descriptions here--ticket taker and monogram machine tender--appear potentially vulnerable for this reason.

The DOT occupational description for a ticket taker reads as follows:

> **344.667-010 TICKET TAKER (amuse. & rec.)**
>
> Collects admission tickets and passes from patrons at entertainment events: Examines ticket or pass to verify authenticity, using criteria such as color and date issued.  Refuses admittance to patrons without ticket or pass, or who are undesirable for reasons, such as intoxication or improper attire.  May direct patrons to their seats.  May distribute door checks to patrons temporarily leaving the establishment.  May count and record number of tickets collected.  May issue and collect completed release forms for hazardous events, and photograph patron with release form for permanent records file.  May Be Designated Gate Attendant (amuse. & rec.) or Turnstile Attendant (amuse. & rec.) when collecting tickets at open-air event.
>
> *GOE: 09.05.08 STRENGTH: L GED: R2 M1 L2 SVP: 2 DLU: 80*

DOT (1991), available at http://www.oalj.dol.gov (follow "DOT" hyperlink; then follow "Service Occupations: 301.137-010 to 362.687-018" hyperlink).  The trailer that follows the occupational description indicates an SVP (Specific Vocational Preparation) of 2, which means "[a]nything beyond short demonstration up to and including one month."[9]

---

9 http://www.occupationalinfo.org/appendxc_1.html

The DOT occupational description for what the vocational expert referred to as a monogram machine tender reads as follows:

> **583.685-046    FUSING-MACHINE    TENDER    (garment; knitting)**
>
> Tends machine that fuses decorative emblems, monograms, labels, collar stays, and backing material to hose or garment parts: Places appliqué on hose or garment part or positions backing on garment part and presses button or lever to activate machine that heats in seals articles together.  May be designated according to article fused as Collar-Stay-Fuser Tender (garment); Emblem-Fuser Tender (garment; knitting); Label-Fuser Tender (garment).
>
> *GOE: 06.04.05 STRENGTH: L GED: R1 M1 L1 SVP: 2 DLU: 77*

DOT (1991), available at http://www.oalj.dol.gov (follow "DOT" hyperlink; then follow "Processing Occupations: 583.137-010 to 599.687-038" hyperlink).

At the time of Plaintiff's administrative hearing before the ALJ, more current occupational descriptions were available.  Specifically, the United States Department of Labor replaced the DOT with O*NET, a database that is continually updated based on data collection efforts that began in 2001. [10]  *See* <u>Cunningham</u>, 360 F. App'x at 616.

The DOT Crosswalk Search Option on O*NET reveals that the ticket taker (DOT 344.667-010) occupation is now designated ushers, lobby attendants, and ticket takers (O*NET 39-3031.00). [11]  The O*NET description reads, "[a]ssist patrons at entertainment events by performing duties, such as collecting admission tickets and passes from patrons, assisting in finding seats, searching for lost articles, and locating such facilities as restrooms and

---

10 https://www.onetcenter.org/dataCollection.html; and https://www.oalj.dol.gov/LIBDOT.HTM

11 https://www.onetonline.org/link/summary/39-3031.00

telephones."[12]  Notably, the O*NET description indicates the SVP range for this occupation is 4.0 to < 6.0 and explains that employees "need anywhere from a few months to one year of working with experienced employees."[13]  Thus, the O*NET description indicates a substantially higher level of specific vocational preparation than the 35 year old DOT description.  Moreover, the O*NET description indicates that technology skills for this occupation include office suite software, operating system software, optical character reader or scanning software, and spreadsheet software.[14]  Because of these substantial conflicts between the descriptions set forth in the DOT and O*NET, the vocational expert's dependence on the 35-year-old DOT listing alone does not warrant a presumption of reliability.

The DOT Crosswalk Search Option on O*NET reveals that the monogram machine tender (DOT 583.685-046) occupation is not even listed on O*NET.  Under the circumstances, the vocational expert's reliance on the 37-year-old DOT listing alone does not warrant a presumption of reliability.

Defendant's attempt to rebut Plaintiff's argument with Social Security Ruling 00-4p is misguided.  The purpose of this policy ruling is to emphasize that before deciding whether a vocational expert's testimony supports a disability determination, Administrative Law Judges must identify and obtain a reasonable explanation for any conflicts between the occupational evidence provided by the vocational expert and information in the DOT, including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of

---

12 Id.

13 Id.

14 Id.

Occupational Titles (SCO). 2000 WL 1898704, at *1; s*ee* <u>Lee v. Barnhart</u>, 63 F. App'x. 291, 292–93 (9th Cir.2003) ("SSR 00–4p does not preclude reliance on the O*NET; it merely provides that where there is a conflict between the DOT and another source, and the ALJ relies on the other source, the ALJ must explain his reasons for doing so."). Here, the Court is not dealing with a conflict between occupational evidence provided by the vocational expert and information in the DOT. Instead, the Court is dealing with the reliability of the vocational expert's evidence in light of his reliance on occupational descriptions in the DOT that were 35 and 37 years old, as this has an impact on whether the vocational expert has identified a significant number of jobs that exist in the regional and national economies that the Plaintiff can perform given her age, education, past work experience, and residual functional capacity.

The Court does not agree with Defendant's contention that the regulations and policy rulings do not contemplate the O*NET as a source of evidence. S*ee* <u>Lee</u>, 63 F. App'x. at 292–93 (federal law "does not preclude reliance on the O*NET"); <u>Moss v. Astrue</u>, No. 09–1196, 2010 WL 2572040, at *7 (C.D. Ill. June 22, 2010) ("[T]he VE is not required to limit his hypothetical to DOT data; the VE can also use outside data, including ONET."). As worded, the regulation makes clear that the Commissioner "will take administrative notice of reliable job information available from various governmental and other publications." 20 C.F.R. § 404.1567(d). The regulation then sets forth a non-exhaustive list of examples that includes the DOT. <u>Id.</u>; *see* <u>Wennersten v. Colvin</u>, No. 12-cv-783-bbc, 2013 WL 4821474, at * (W.D. Wis. Sept. 10, 2013) ("the list is not exclusive"). This interpretation of the regulation is consistent with Social Security Ruling 00-4p which in relevant part reads, "[t]he regulations at 20 CFR 404.1566(d) and 416.966(d) provide that we will take administrative notice of 'reliable job information' available

from various publications, including the DOT." 2000 WL 1898704, at *2. As previously mentioned, the United States Department of Labor replaced the DOT with O*NET, a database that is continually updated based on data collection efforts that began in 2001. [15] *See* <u>Cunningham</u>, 360 F. App'x at 616. Thus, the O*NET contains "reliable job information" of which the Commissioner could take administrative notice when determining whether a particular job exists in significant numbers in the regional and national economy.

For the foregoing reasons, the vocational expert's reliance on the two DOT occupational listings does not warrant a presumption of reliability. Thus, there does not appear to be substantial evidence to support the ALJ's finding that prior to February 24, 2015, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed considering her age, education, work experience, and residual functional (Tr. 34-35 Finding No. 11). Inasmuch as the Commissioner's findings are not supported by substantial evidence, the final decision of the Commissioner will be reversed and this matter will be remanded, pursuant to sentence four of 42 U.S.C. § 405(g), to the Commissioner for reconsideration of whether the DOT listings, specifically the ticket taker and monogram machine tender descriptions, were reliable in light of the economy as it existed at the time of the hearing before the ALJ. *See* <u>Faucher v. Sec'y of Health & Human Servs.</u>, 17 F.3d 171, 175 (6th Cir. 1994) (sentence four of 42 U.S.C. § 405(g) authorizes a post judgment remand).

B

The undersigned is aware that Plaintiff has raised other claims with regard to the ALJ's findings (DN 11). In light of the above conclusion, the undersigned deems it unnecessary to

---

15 https://www.onetcenter.org/dataCollection.html; and https://www.oalj.dol.gov/LIBDOT.HTM

address those other claims.   Further, the ALJ will have the opportunity to remedy those issues when he conducts additional proceedings to remedy the above identified defect in the original proceedings.

<u>ORDER</u>

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **REVERSED.**

**IT IS FURTHER ORDERED** that this matter is **REMANDED**, pursuant to 42 U.S.C. § 405(g), to the Commissioner for further proceedings.

Copies:          Counsel